## STATE OF CONNECTICUT *v.* DARYL OBER
## (8884)

NORCOTT, FOTI and CRETELLA, Js.

Argued December 3, 1990—decision released April 2, 1991

*Kent Drager,* assistant public defender, with whom, on the brief, was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom, on the brief, was *John Redway,* state's attorney, for the appellee (state).

NORCOTT, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of possession of a narcotic substance with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b). He challenges (1) the sufficiency of the evidence for his conviction, (2) the admission of evidence allegedly obtained in violation of his right against unreasonable searches and seizures, (3) the reading of the information to the jury at the start of trial, (4) the admission of an alleged hearsay statement, (5) the trial court's instructions on reasonable doubt, and (6) the trial court's decision allowing the state's attorney to retain a copy of the presentence investigation report.

The jury could have reasonably found the following facts. On June 18, 1989, Officer William Clayton of the Middletown police department was patrolling the north end of Middletown, an area known for drug trafficking, in a marked police cruiser. At approximately 10 p.m., he received a radio message dispatching him to the area of 39 Liberty Street to check on a suspicious vehicle. Officer Kevin Singleton was also sent to Liberty Street as a back-up officer.

When Clayton turned onto Liberty Street, the only car he saw was a red Chevrolet Beretta. Two people

were seated inside the car and a third was standing on the sidewalk near the passenger window, apparently leaning into the car. As Clayton pulled behind the Chevrolet, Singleton arrived and parked his cruiser in front of the car, boxing it in.

When the officers approached the car, the person who had been standing at the passenger door began to walk away rapidly. Clayton and Singleton called to him to return. When he did, Clayton recognized him as T, a fifteen year old whom Clayton had seen many times in suspicious circumstances. Singleton then interviewed T.

Clayton approached the driver, who was still in the car, and asked him for identification. He learned that the driver was Theodore Bennett of East Haddam. Clayton asked Bennett what he was doing on Liberty Street, and Bennett responded that he was going to the Cromwell Burger King. Dissatisfied with this answer, Clayton asked Bennett how to get to his stated destination, but Bennett did not know.

Clayton then went to the passenger side of the car where the defendant was seated. Because the defendant appeared reluctant to answer Clayton's questions, Clayton asked him to get out of the car. As the defendant got out of the car, Clayton saw several $100 bills tucked loosely into the map pocket on the inside of the passenger door. He closed the door, escorted the defendant to the rear of the car and asked him for identification. When the defendant opened his wallet, Clayton saw a pistol permit. He asked the defendant if he was carrying a weapon, and the defendant answered that he was not. Clayton next asked the defendant if there were any guns in the car, and the defendant asserted that there were not.

The officers then searched the car for weapons. Singleton entered the car from the passenger side. As he

bent to look under the passenger seat, he saw a plastic bag protruding from between the passenger seat and the front console. Singleton pulled the bag out and saw that it contained a white powdery substance that he believed to be narcotics. Singleton seized the bag and Clayton placed the defendant, Bennett and T under arrest.

Singleton continued to search the car and found a brown paper bag on the floor behind the passenger seat. In it he found a wooden pipe with a dirty filter, a tube partially filled with a yellowish liquid, a large plastic cup, a smaller container with a cover and a second plastic bag that held a white, powdery and rocky substance.

The defendant was then searched incident to his arrest. A $100 bill was found in his pants pocket and seized. The five $100 bills in the map pocket of the passenger door were also seized. The defendant, Bennett and T each denied ownership or knowledge of the $500.

At the Middletown police station, Officer David Christiana inventoried the contents of the defendant's wallet. Inside the wallet he found several pieces of paper. On some slips were names with telephone numbers and on another were many of the same names with other figures. Christiana testified that these papers appeared to be records of drug transactions, listing quantities of drugs delivered and amounts of money owed. Christiana also described the practice of drug dealers of diluting cocaine with other substances and testified that several of the items found in the paper bag could have been used in that respect.

Subsequent testing revealed that neither the plastic bag taken from the front seat of the car nor the tube contained a narcotic substance. The other items found in the paper bag, however, including the white powdery and rocky substance, tested positive for cocaine.

## I

The defendant first claims that his conviction was based on insufficient evidence. Specifically, he alleges that the state failed to present sufficient evidence to establish that he possessed the cocaine found behind the passenger seat of the car.[1] We disagree.

It is axiomatic that, in reviewing a claim of insufficient evidence, this court must determine, viewing the evidence presented in the light most favorable to sustaining the verdict, whether "the trier could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." *State* v. *Zayas,* 195 Conn. 611, 620, 490 A.2d 68 (1985). Therefore, the question before us in this case is whether, from the facts presented at trial, it was reasonable and logical for the jury to determine that the defendant had constructive possession of the cocaine that was seized from behind the passenger seat of the car.

General Statutes § 21a-278 (b) requires proof that the defendant possessed a narcotic substance. To establish possession, the state must show beyond a reasonable doubt that "the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it." *State* v. *Alfonso,* 195 Conn. 624, 633, 490 A.2d 75 (1985); see also *State* v. *Brunori,* 22 Conn. App. 431, 435–36, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990). "Where the defendant is not in exclusive possession of the premises where

---

[1] At the close of the state's case, the defendant filed a motion for judgment of acquittal based on the insufficiency of the evidence. Although there is no ruling of record on the motion, the trial court's acceptance of the verdict and sentencing of the defendant may be seen as an implicit denial of the motion.

the narcotics are found, 'it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference.' . . ." (Citations omitted.) *State* v. *Alfonso,* supra. Thus, "the presence of the defendant near the contraband without more is insufficient to support an inference of possession." *State* v. *Brunori,* supra, 436.

In this case, there was sufficient other indicia of ownership to support the defendant's conviction. The defendant was seen seated in a parked car conversing with an individual who was well known to the police in an area known for drug trafficking. Five $100 bills were loosely tucked into the map pocket of the passenger door next to the defendant, and another $100 bill was found in his pants pocket. In addition, the defendant was carrying what appeared to be drug records in his wallet. This evidence, combined with the fact that the drugs and drug paraphernalia were discovered on the floor of the car directly behind the defendant, shows a pattern of drug dealing and, as such, sufficiently supports the jury's verdict.

There is no merit to the defendant's claim that the papers found in his wallet cannot be used to show that he possessed the cocaine seized. In support of this claim, the defendant asserts that Christiana believed that those papers were drug records only because he assumed a fact properly left for the jury's determination, i.e., that the defendant possessed the cocaine that was seized. At trial, however, Christiana testified that he believed that the papers were drug records not because he thought that the defendant was found in possession of the cocaine seized but because of the circumstances of the defendant's arrest and the charac-

ter of the other items that were seized. Thus, the use of the papers found in the defendant's wallet is not, as he suggests, circular reasoning.

## II

The defendant next claims that the trial court improperly admitted evidence obtained in violation of his state and federal constitutional rights against unreasonable searches and seizures. Specifically, he challenges the initial stop of the car and the search and seizure of the brown bag and its contents.

Because the defendant failed to preserve this claim at trial by filing a motion to suppress, he requests review under the bypass rule of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), as reformulated in *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). We decline to review this claim because the defendant has not satisfied the first prong of *Golding,* namely, that the record is adequate to review the alleged claim of error. *State* v. *Golding,* supra, 239–40.

A stop for investigative purposes is justified under *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), when police have a reasonable and articulable suspicion that the person is engaged or about to be engaged in criminal activity. See *State* v. *Aillon,* 202 Conn. 385, 399, 521 A.2d 555 (1987). Whether there is a reasonable and articulable suspicion depends on the totality of the circumstances. Id. When police reasonably believe that the person is armed, the officers may "pat down" the person for weapons and, if it is a car stop, search the passenger compartment for weapons. *Michigan* v. *Long,* 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983); *State* v. *D'Ambrosio,* 14 Conn. App. 309, 541 A.2d 880 (1988), rev'd, 212 Conn. 50, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990).

In addition, if " 'the officer's suspicions are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances.' " *State* v. *Aillon,* supra, 401.

The defendant in this case has failed to provide us with any record of the basis for the "suspicious vehicle" dispatch that led to the stop of the car in which he was a passenger. As a result, we cannot determine whether the stop and ensuing police investigation, which included the search and seizure of the brown bag and its contents, were valid under *Terry* v. *Ohio,* supra. Therefore, because the defendant cannot satisfy the first prong of *Golding,* we decline to review this claim.

### III

The defendant next claims that the trial court should not have allowed the jury to be told at the start of trial that he was charged as a person who is not drug-dependent. Again, because this claim was not preserved at trial, the defendant seeks review under *State* v. *Evans,* supra, and *State* v. *Golding,* supra.

The following additional facts are necessary to our discussion of this issue. Before any evidence was presented, the court clerk read the information to the jury. The information charged the defendant with possession of cocaine with intent to sell at a time when he "was not a drug-dependent person."

After the state closed its case, the defendant did not present any evidence. Accordingly, the trial court correctly concluded that the defendant had failed to meet his burden of introducing "some substantial evidence tending to prove his drug dependency." *State* v. *Luca,* 19 Conn. App. 688, 671, 563 A.2d 752 (1989); see also *State* v. *Januszewski,* 182 Conn. 142, 169, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). Because the defendant had failed

to meet this burden, the state was not required to prove beyond a reasonable doubt that the defendant was not drug-dependent, and was instead entitled to rely on a presumption that the defendant was not drug-dependent. *State* v. *Luca,* supra. As the issue of drug dependence was no longer before the jury, the trial court properly allowed the state to amend the information, deleting the reference to drug dependency, and did not instruct the jury on drug dependency. *State* v. *Vaughn,* 20 Conn. App. 386, 390, 567 A.2d 392 (1989).

During its deliberations, the jury sent out a note to the trial court asking: "At the opening of the trial the court stated that Mr. Ober was being tried as a 'non-user' of dependency producing drugs (or words to that effect). (1) May we hear that portion again? (2) Does that statement indicate that Mr. Ober is not a cocaine user?"

In response to their first request, the trial court instructed the jurors to disregard the information that had been read to them at the beginning of the trial and to focus instead on the amended information. The court reminded the jury that the amended information was not to be used as evidence of the defendant's guilt. The trial court then told the jurors that, in light of its response to their first inquiry, their second question was moot. Finally, the court reminded the jurors that their duty was to find the facts from the evidence presented.[2]

---

[2] More specifically, the court addressed the jury's questions as follows:

"I'm going to answer that in the following fashion, ladies and gentlemen; I'm going to instruct you at this time to disregard the information that was read to you at the commencement of the trial. The information which you have with you, together with the exhibits, is the instrument—is the information that you will consider in your deliberations on this case.

"As I pointed out to you in my instructions, the information, however, is not evidence. The information merely is the formal method of presenting a person for trial on a criminal case.

The defendant claims that the reading of the information at the start of trial confused the jury, and that this confusion was not cured by the trial court's supplemental instructions. The defendant has failed to demonstrate, however, that this claim is "of constitutional magnitude alleging the violation of a fundamental right." *State* v. *Golding,* supra, 239. He challenges only the reading of the information at the start of the trial, a procedure routinely adopted and designed to aid jurors in their assimilation of the evidence presented to them. In addition, the trial court, in response to the jurors' inquiry, properly drew their attention to the amended information, making an answer to their second request unnecessary. Therefore, we decline to review this claim.

## IV

The defendant next challenges the trial court's admission into evidence of Bennett's statement to police that he was going to the Cromwell Burger King. The defendant also claims that the state's attorney committed prosecutorial misconduct when he argued to the jury that Bennett's statement showed the defendant's consciousness of guilt.

At trial, Clayton testified over the defendant's objection that Bennett, in response to the officer's question, told Clayton that he was going to the Cromwell Burger King. Clayton also testified that Bennett's answer "didn't sit very well" with him and caused him to continue his investigation. In conjunction with overruling

"In view of that response by the court, the court feels that, at this point, your second question, 'Does that statement indicate that Mr. Ober is not a cocaine user?' is a moot point. On this question, the court can only reiterate that you as the ladies and gentlemen of the jury are to find the facts from all the evidence that's been presented to you, both physical and testimonial evidence, and make your final determination as to where the truth lies. All right?"

the defendant's objection that the testimony was hearsay, the trial court later instructed the jury that Bennett's statement was to be used not for its truth but only to show its effect on Clayton, the hearer, and to explain his subsequent actions.

It is axiomatic that an out-of-court statement that is not offered to prove the truth of the matter asserted therein is not hearsay. *State* v. *Alvarez,* 216 Conn. 301, 310, 579 A.2d 515 (1990); *State* v. *Hull,* 210 Conn. 481, 498–99, 556 A.2d 154 (1989). A statement that is offered not for its truth but to show its effect on the hearer, therefore, is not hearsay. *State* v. *Alvarez,* supra; *State* v. *Hull,* supra, 499–500; *State* v. *Silveira,* 198 Conn. 454, 473, 503 A.2d 599 (1986). Because Bennett's statement was admitted into evidence for this limited purpose, the testimony was not hearsay.

The defendant seeks review of his unpreserved claim of prosecutorial misconduct under the bypass rule of *Evans* and *Golding.* This court will review such claims only when the claimed misconduct is blatantly egregious and shows a pattern of conduct repeated throughout the trial. *State* v. *Somerville,* 214 Conn. 378, 393, 572 A.2d 944 (1990); *State* v. *Rogers,* 207 Conn. 646, 654, 542 A.2d 1136 (1988); *State* v. *Williams,* 204 Conn. 523, 539, 529 A.2d 653 (1987).

In this case, the defendant challenges the state's attribution of Bennett's statement to the defendant to show his consciousness of guilt.[3] The prosecuting attorney's comment, made during closing argument, was fleeting at best and is neither blatantly egregious nor part of a pattern of misconduct. Accordingly, we decline to review this claim.

---

[3] Specifically, the defendant challenges the state's description of the defendant as "this unemployed person who is going to Burger King, purportedly, at ten o'clock at night in Cromwell, and just diverts off onto Liberty Street in Middletown, coming from the other side of the river."

V

The defendant next challenges the trial court's instructions on reasonable doubt. Specifically, he claims that the court improperly instructed the jury that "if all of the evidence has been impartially and thoroughly reviewed by you and it produces in your mind a settled and abided belief that you would be willing to act upon in matters of the highest importance relative to your own affairs, then in that event you would be free from a reasonable doubt and should declare the defendant to be guilty."

Once again, the defendant seeks review of this unpreserved claim under *State* v. *Evans,* supra, and *State* v. *Golding,* supra. We find that the defendant has not satisfied the third prong of *Golding,* namely, that the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial. *State* v. *Golding,* supra, 240.

In reviewing a constitutionally based challenge to the court's instructions to the jury, we must examine the charge as a whole to determine whether it is reasonably possible that the jury was misled by the challenged instruction. *State* v. *Snook,* 210 Conn. 244, 275–76, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989); *State* v. *Bailey,* 209 Conn. 322, 338, 551 A.2d 1206 (1988). The defendant in this case objects only to one sentence in the trial court's instructions on reasonable doubt. "Even if the phrase were incorrect, one single misstatement in the context of an otherwise appropriate charge can be overlooked." *State* v. *Kelly,* 23 Conn. App. 160, 166, 580 A.2d 520 (1990).

When taken as a whole, the trial court's instructions on reasonable doubt gave the jurors a clear understand-

ing of the state's burden of proof.[4] Thus, it is not reasonably possible that the jury was misled by the court's charge.

## VI

The defendant's final claim is that the trial court improperly allowed the state's attorney to retain a copy of the presentence investigation report (PSI) in viola-

[4] The court charged the jury on reasonable doubt in the following manner: "The state, in other words, can sustain the burden resting upon it only if the evidence before you establishes the existence of every element constituting the crime charged beyond a reasonable doubt. A reasonable doubt means a doubt founded upon reason and common sense. As the words imply, it is a doubt held by a reasonable person after all of the evidence in the case is carefully analyzed, compared, and weighed. A reasonable doubt may arise not only from the evidence produced, but also from a lack of evidence. Since the burden is upon the state to prove the defendant guilty beyond a reasonable doubt of every essential element of the crime charged, a defendant has the right to rely upon the failure of the prosecution to establish such proof. Reasonable doubt is the kind of doubt upon which reasonable persons like yourselves, in the more serious and important affairs in your own life, would hesitate to act. On the other hand, if all of the evidence has been impartially and thoroughly reviewed by you and it produces in your mind a settled and abided belief that you would be willing to act upon, in matters of the highest importance relative to your own affairs, then in that event you would be free from a reasonable doubt and should declare the defendant to be guilty.

"If, however, on all of the evidence, you have a reasonable doubt as to the guilt of the defendant, you must find him not guilty. However, absolute certainty in the affairs of life is almost never attainable, and the law does not require absolute certainty on the part of the jury before you return a verdict of guilty.

"The state does not have to prove guilt beyond all doubt or to a mathematical or to an absolute moral certainty. What the law requires, however, is that, after hearing all of the evidence, if there is something in that evidence, or lack of evidence, which leaves in the minds of the jury, as reasonable men and women, a reasonable doubt about the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted. If there is no reasonable doubt, then the defendant must be found guilty. Proof beyond a reasonable doubt is proof which precludes every reasonable hypothesis except guilt. It's consistent with guilt and it's inconsistent with any other reasonable conclusion. If you can, in reason, reconcile all the facts proved, with any reasonable theory consistent with the innocence of the accused, then you cannot find him guilty."

tion of Practice Book §§ 916 and 917.[5] Although the defendant failed to preserve this claim at trial, we review his claim under the plain error doctrine. Practice Book § 4185.

Our decision in this case is controlled by this court's recent ruling in *State* v. *Cofield,* 22 Conn. App. 10, 576 A.2d 156, cert. granted, 215 Conn. 813, 576 A.2d 542 (1990). At the sentencing hearing in *Cofield,* the state argued that it should be allowed to keep a copy of the defendant's PSI because the majority of people sentenced in Connecticut return to the court on other charges and because of the possibility of the defendant's future parole violations or sentence reviews. This

---

[5] Practice Book § 916 provides: "The presentence investigation report and copies thereof made available under Sec. 915 shall be returned to the probation officer or delivered to the clerk immediately following the imposition of the sentence. No person shall, without the permission of the court, make or cause to be made any copy of any presentence investigation report except as authorized by Secs. 915 and 917."

Practice Book § 917 provides: "The presentence investigation report shall not be a public record and shall not be accessible to the public. It shall be available initially to the parties designated in Sec. 915 for use in the sentencing hearing and in any subsequent proceedings wherein the same conviction may be involved, and it shall be available at all times to the following:

"(1) The department of adult probation;

"(2) The correctional or mental health institution to which the defendant is committed or may be committed;

"(3) The board of parole;

"(4) The board of pardons;

"(5) The sentence review division of the superior court;

"(6) The judicial review council;

"(7) Any court of proper jurisdiction where it is relevant to any proceeding before such court. Such court may also order that the report be made available to counsel for the parties for the purpose of such proceeding;

"(8) Counsel for the defendant and the prosecuting authority during negotiations relating to other offenses pending against the defendant or subsequently charged against him; and

"(9) Counsel for the defendant in a sentence review hearing or habeas corpus proceeding upon counsel's request to the department of adult probation; and

"(10) Any other person or agency specified by statute."

court rejected the state's argument and held that "in order to invoke the exception to nonaccess found in § 916, a requesting party must make a showing of need particular to the case before it." Id., 24.

In the present case, the state made no showing at all, particular to the case or not, of its need to keep a copy of the defendant's PSI. In fact, the trial court itself initiated the request to retain the PSI.[6] The state argues on appeal, however, that such a showing was not required because the trial court was authorized to allow the retention of defendant's PSI by Practice Book § 917 (7), which mandates that such reports be available at all times to "[a]ny court of proper jurisdiction where it is relevant to any proceeding before such court" and upon court order to "counsel for the parties for the purpose of such proceeding . . . ." Contrary to the state's argument, however, nothing in § 917 authorizes the court to allow the state to keep a copy of the defendant's PSI on the court's own motion. Therefore, because the request to retain a copy of the defendant's PSI was initiated in this case not by the state but by the court, we find that the trial court improperly excused the state from making a showing of need as required by *State* v. *Cofield,* supra.

The judgment is reversed in part and the case is remanded with direction to order the prosecuting attorney to return all copies of the defendant's PSI. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[6] The colloquy between the trial court and the prosecuting attorney was as follows:

"The Court: Does the state request to keep a copy of the presentence investigation?

"Mr. Redway: I do, Your Honor. . . .

"Mr. Redway: . . . And yes, Your Honor, I would like the permission of the court, to retain a copy of the presentence investigation report.

"The Court: Okay, I'll deal with the latter item first. The court grants you permission to keep a copy of the presentence investigation."