FOUR D'S, INC. *v.* SALVATORE MATTERA ET AL.
(9530)

DUPONT, C. J., DALY and NORCOTT, Js.

Argued April 22—decision released July 23, 1991

*Robert M. Davidson,* with whom, on the brief, were *Howard B. Naylor* and *James F. Wojeck,* for the appellants (defendants).

*Paul J. Pacifico,* for the appellee (plaintiff).

NORCOTT, J. The principal issue in this appeal is whether, under the terms of an agreement to convey certain real estate located in Norwalk, the proposed corporate purchaser met its contractual obligations. The defendants also claim that the trial court improperly (1) accepted the trial referee's recommended award of damages, (2) failed to render a decision on their motion for a mistrial and (3) refused to correct the referee's findings of fact. We affirm the judgment of the trial court.

The following facts are necessary to our discussion of these issues. In a written agreement signed by the defendants, Salvatore and Mary Ann Mattera, on December 28, 1985, and by the plaintiff on January 3,

1986, the defendants agreed to sell certain real estate that they owned in Norwalk to the plaintiff. Pursuant to the agreement, which stated a base price of $231,000, the plaintiff was to use due diligence to secure, on or before May 1, 1986,[1] zoning approval to construct at least seven housing units on the property. If the plaintiff was unable to secure such zoning approval, the contract provided that the defendants were to be so notified before the deadline, in which case the agreement would become null and void and all moneys paid as a deposit, less a $150 fee for the preparation of the agreement, would be refunded to the plaintiff.[2] The agreement also provided that if the plaintiff was able to secure zoning approval for any additional units the defendants were to receive $33,000 for each such unit, even if the approval was obtained after the closing of title.[3]

---

[1] The original agreement set a deadline of March 1, 1986. That deadline was changed to May 1, 1986, by a second undated agreement between the parties.

[2] Paragraph twenty of the agreement states: "This Agreement is contingent upon the Purchaser's ability to obtain, at its own expense, zoning approval, on or before May 1, 1986, to build at least seven (7) housing units on the property provided however that the Purchaser uses due diligence in obtaining such zoning approval and notifies the Seller's attorney, Robert J. DeSantis, 7 Huckleberry Drive North, Norwalk, Ct. 06850, (203) 847-6160, on or before May 1, 1986 that it has been unable to obtain such approval, in which event this Agreement shall become null and void and all sums paid hereunder shall be refunded to the Purchaser less the sum of $150.00 for the Seller's expense for the preparation of this Agreement."

[3] Paragraph twenty-one of the agreement states: "In the event that after the closing of title and prior to the development of the property, the Purchaser or any subsequent transferee of the property obtains zoning approval to build a number of housing units in excess of the number of housing units on which the closing purchase price of this Agreement is based, the Purchaser agrees to immediately pay the Seller an additional THIRTY THREE THOUSAND ($33,000) Dollars for each such approved housing unit. It is agreed that this paragraph shall survive the closing of title. For purposes of this paragraph 'development' is defined as the commencement of construction of housing units."

After March 1, 1986, the parties met regarding the plaintiff's ability to obtain zoning approval for more than seven units. The defendants claimed that the plaintiff was not trying to maximize the development capabilities of the property. The plaintiff contended that it had been led to believe from discussions with Norwalk zoning officials that a variance would be needed to construct more than the seven base units and that approval for such a variance was unlikely. Despite these discussions, the plaintiff demanded to close title on May 1, 1986, and stood ready to pay the $231,000 contract price. The defendants refused to close title and retained certain moneys as provided for in the agreement.

The plaintiff instituted this action against the defendants on June 17, 1986, seeking specific performance of the agreement, damages for the defendants' breach of the agreement and attorney's fees. The case was referred to a state trial referee appointed pursuant to General Statutes § 52-434 (a) (4). After a full hearing held in June and July of 1986, the referee reported her findings of fact in a memorandum of decision dated December 13, 1988. The referee concluded that the plaintiff had performed its obligations but that the defendants had breached the contract by refusing to convey title. She recommended that the plaintiff be awarded specific performance of the contract and $56,000 in damages plus statutory interest from May 1, 1986, the date that the closing was scheduled to have taken place.

The defendants filed a motion to correct the referee's findings on May 31, 1989. Because the referee failed to render a decision on that motion, the defendants moved for a mistrial on April 12, 1990. Shortly thereafter, the referee denied the defendants' motion to correct. On August 28, 1990, the trial court accepted all of the referee's recommendations, except for the

award of statutory interest,[4] and rendered judgment accordingly. The defendants filed objections and exceptions to the trial court's actions, and this appeal ensued.

Finally, during the pendency of the action at the trial court, the city of Norwalk rezoned the property so that it can now contain only four units.

I

The essence of the defendants' first claim lies in the interpretation of the agreement regarding the plaintiff's obligation to secure zoning approval. The defendants contend that the plaintiff did not satisfy the agreement's due diligence requirement because (1) the agreement mandated that the plaintiff use due diligence to secure zoning approval for more than the seven base units and (2) the plaintiff failed to secure zoning approval for even the seven base units.

It is axiomatic that "a reviewing authority may not substitute its findings for those of the trier of the facts." *Wilcox Trucking, Inc.* v. *Mansour Builders, Inc.,* 20 Conn. App. 420, 423, 567 A.2d 1250 (1989), cert. denied, 204 Conn. 804, 573 A.2d 318 (1990). "In a contract action, findings of fact should be overturned only when they are clearly erroneous. *Pomarico* v. *Gary Construction, Inc.,* 5 Conn. App. 106, 112, 497 A.2d 70, cert. denied, 197 Conn. 816, 499 A.2d 1336 (1985)." *Wilcox Trucking, Inc.* v. *Mansour Builders, Inc.,* supra, 425. What the parties intended to include in their contract is a question of fact. *Gallicchio Bros., Inc.* v. *C & S Oil Co.,* 191 Conn. 104, 107, 463 A.2d 600 (1983); *Crowther* v. *Gerber Garment Technology, Inc.,* 8 Conn. App. 254, 263, 513 A.2d 144 (1986). Although attorney trial referees are bona fide factfinders in this

---

[4] The trial court's refusal to accept the referee's recommendation of the imposition of statutory interest is not involved in this appeal.

state, a referee's determinations of law are not binding on the court. See *Dills* v. *Enfield,* 210 Conn. 705, 713, 557 A.2d 517 (1989).

In this case, the attorney trial referee found that, pursuant to paragraph twenty of the agreement, the plaintiff was obligated to use due diligence to secure zoning approval for the construction of seven units only. The referee further found that the parties agreed that approval of the seven units was obtainable and that, prior to the closing date, the plaintiff had clearly notified the defendants that it was "ready, willing and able to close." The referee concluded that the defendants had refused to convey title because the plaintiff had not succeeded in obtaining permission from the Norwalk zoning authorities to build more than seven units. The trial court reviewed the record, fully agreed with the referee's conclusions of law and implicitly found that her findings of fact were not clearly erroneous. Our review of the record does not lead us to a different conclusion.

The defendants' argument that the agreement required the plaintiff to exercise due diligence to obtain zoning approval for more than seven units is unsupported by the record. As duly noted by both the referee and the trial court, although paragraph twenty, which deals with the seven base units, contains a due diligence requirement, paragraph twenty-one, which refers to additional units, does not. The plain, clear language of the contract must be accorded its logical effect. *Leonard Concrete Pipe Co.* v. *C. W. Blakeslee & Sons, Inc.,* 178 Conn. 594, 599, 424 A.2d 277 (1979). Thus, the referee and the trial court properly concluded that there was no need to use due diligence with respect to the securing of zoning approval for any additional units.

In any case, it is clear from the referee's report and from the court's memorandum of decision that, notwithstanding the lack of such a due diligence requirement, the plaintiff actively and diligently pursued zoning approval for additional units by contacting zoning authorities, discussing the problems of zoning approval with the defendants, asking the defendants to sign documents necessary to initiate the variance process and offering to pay for all costs incurred by the defendants if they could obtain zoning approval despite the plaintiff's efforts.

The defendants' claim that the referee improperly failed to find that the plaintiff had not used due diligence in securing zoning approval for the seven base units is equally without merit. The trial court accepted the referee's finding that "[t]here was and is no dispute among the parties that approval for seven units was in fact obtainable." This finding was in accord with the referee's further determination that, although the plaintiff had never obtained zoning approval for the seven unit proposal, the defendants had asserted early in the negotiations that, the agreement notwithstanding, they would not close title on only seven units. The referee specifically found that the defendants' insistence on maximizing the development possibilities of the property manifested itself in their refusal to sign certain documents that would have initiated the approval process for the seven base units. On the basis of these findings, the referee concluded, and the trial court agreed, that the plaintiff had fulfilled its obligation under the contract. Absent clear error, we will not disturb the trier's factual findings. *Wilcox Trucking, Inc.* v. *Mansour Builders, Inc.*, supra; *Pomarico* v. *Gary Construction, Inc.*, supra. We find no such error in this case.

## II

The defendants next claim that the trial court improperly accepted the referee's recommended award of damages. Specifically, they claim that there was insufficient evidence from which the court could have based an award of damages because the plaintiff's expert used no acceptable method of valuing the property.

Both parties acknowledge that in an action for specific performance the trial court maintains the discretion to award damages. *Allen* v. *Nissley,* 184 Conn. 539, 440 A.2d 231 (1981). The court must exercise its discretion "depending upon the equities in the case and based on reason and sound judgment." *Schneidau* v. *Manley,* 131 Conn. 285, 289, 39 A.2d 885 (1944). In actions requiring the valuation of property, the trial court has a duty to make an independent determination of the value of the property involved. *Ratner* v. *Willametz,* 9 Conn. App. 565, 584, 520 A.2d 621 (1987). "There are three accepted methods of valuation which may be used for the assessment of real property. They are the comparable sales approach, the income approach or the reproduction cost or cost approach." *Whitney Center, Inc.* v. *Hamden,* 4 Conn. App. 426, 427–28, 494 A.2d 624 (1985).

Here, the trial court accepted the referee's finding that the plaintiff had suffered damages in the amount of $56,000. That amount was to be subtracted from the contract price of $231,000 for a resulting purchase price of $175,000 to be paid to the defendants when they tendered the deed in accordance with the court's decree of specific performance. The referee reached this assessment of damages after hearing the testimony of Dominic Montana, a real estate broker offered by the plaintiff as an expert witness on the subject of the valuation of the property at issue. The defendants called

Montana as their own witness, but offered no rebuttal evidence of damages.

At trial, Montana, an experienced broker, testified that he was very familiar with the subject property. He stated that he had determined the value of the property after the zone change by comparing sales of other properties in the nearby area. The defendants argue that the referee should have discounted Montana's testimony as pure speculation. They further contend that the court was powerless to consider Montana's opinion because he could not give the names of the properties he studied, the dates on which they were sold, or the amounts for which they were sold. We do not agree.

Our Supreme Court has stated that the valuation of real property is not an exact science. "It is a matter of opinion based on all the evidence and, at best, is one of approximation." *Crowther* v. *Guidone,* 183 Conn. 464, 470, 441 A.2d 11 (1981). The trial court has both the responsibility to assess the credibility of the witnesses and the weight to be given their testimony; *Riccio* v. *Abate,* 176 Conn. 415, 418, 407 A.2d 1005 (1979); and the discretion to accept or reject the expert's opinion of value. *Griffin* v. *Nationwide Moving & Storage Co.,* 187 Conn. 405, 422, 446 A.2d 799 (1982).

In this case, the trial court correctly concluded that the referee carefully considered Montana's opinion and the other evidence before her, rejected as "speculative" the overgenerous profit calculation given by the plaintiff and found that the land at the time of trial was worth $175,000. Again, we cannot retry the facts. *Wilcox Trucking, Inc.* v. *Mansour Builders, Inc.,* supra; *Pomarico* v. *Gary Construction, Inc.,* supra. Therefore, the defendants' claim must fail.

III

The defendants next claim that the trial court improperly failed to rule on their motion for a mistrial. The

short answer to this claim is provided in our recently decided case of *State* v. *Ober,* 24 Conn. App. 347, 588 A.2d 1080 (1991). There, the trial court failed to address a motion for judgment of acquittal based on the insufficiency of the evidence made after the state rested its case. We held that in accepting the verdict and sentencing the defendant, the trial court implicitly found no merit in the defendant's motion. Id., 351 n.1. Although *State* v. *Ober,* supra, was a criminal case, there is no logical reason why the same analysis should not apply here. While there is no evidence of a ruling on the defendants' motion for a mistrial, the trial court accepted the referee's recommendation, rendered judgment accordingly and, thus, implicitly denied the defendants' motion.

## IV

The defendants' final claim is that the trial court wrongfully withheld its power to correct the referee's findings of fact. This claim is yet another attack on the referee's findings of fact and, as such, requires little discussion. We have repeatedly asserted in both this case and a host of other cases that we will not retry the facts. *Wilcox Trucking, Inc.* v. *Mansour Builders, Inc.,* supra; *Pomarico* v. *Gary Construction, Inc.,* supra.

The judgment is affirmed.

In this opinion the other judges concurred.