[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This controversy involves two attorneys in Stamford who are engaged in the practice of patent, trademark and copyright law, and the amount, if any, that the defendant, F. Eugene Davis, IV, owes the plaintiff, Mark Stone, for legal services rendered by plaintiff to the defendant during their association. In the first count of his complaint, the plaintiff alleges that he was employed by the defendant for approximately three years between 1985 and 1988, and it had been agreed between the parties that plaintiff would be compensated with a base salary plus commissions on billings he produced. Plaintiff seeks approximately $20,000, as well as double damages pursuant to General Statutes § 31-72 for unpaid wages. In the second count, plaintiff claims that defendant was unjustly enriched by services he provided to the defendant.
The defendant filed a number of special defenses and a five-count counterclaim. The special defenses contend that: plaintiff was not a partner or an independent contractor, rather than an employee of defendant; defendant had already tendered the plaintiff all that was owed him; plaintiff had repudiated his agreement with defendant by failing to keep proper records of his time charges and by neglecting to bill clients for services rendered; plaintiff's conduct rendered the agreement between the parties impossible to perform; and defendant was entitled to a set-off by reason of plaintiff's breach of contract. In the first count of the counterclaim, defendant alleges that he had one Eric Munson as a client; that plaintiff performed legal services for Munson but failed to record the time spent and to bill Munson for services rendered; that plaintiff encouraged Munson not to pay invoices sent him by the defendant's office; and that plaintiff interfered with the defendant's relationship with Munson, all to defendant's loss and damage. In the second count of the counterclaim, defendant claims that plaintiff breached his fiduciary duty to the defendant by soliciting defendant's clients for plaintiff's own benefit. Defendant contends in the third count of his counterclaim that plaintiff failed to bill for services rendered to his own clients and to clients of the defendant's office. Defendant claims in the fourth count that plaintiff breached his agreement with defendant by failing to keep adequate time records for work performed. In the fifth count, defendant alleges that plaintiff misrepresented that he would keep adequate records and bill clients for legal services performed. CT Page 5691
The plaintiff filed the following special defenses to the counterclaim: (1) that the agreement for his compensation, including wages and commissions, was in writing and could not be varied by parol evidence; (2) that defendant was estopped from claiming that plaintiff was his employee; (3) that defendant was estopped from claiming that plaintiff did not have the discretion to bill or not bill his clients for services performed; (4) that defendant had unclean hands with respect to Munson, as defendant had submitted bills to Munson that included work not performed by plaintiff; (5) that defendant was guilty of laches because defendant had not billed plaintiff's clients in a timely fashion; (6) that defendant was not entitled to any set-off based on the provisions of General Statutes § 31-7(d)(e); and (7) that defendant was estopped from denying that he owed plaintiff back wages because of his agreement with the Connecticut Department of Labor with respect to plaintiff's claim.
This case was referred to Attorney Kevin Tierney, an attorney trial referee, in accordance with General Statutes § 52-434
(a) and Practice Book § 428 et seq. The referee conducted a trial and then filed a report containing a number of findings of fact, including: (1) that plaintiff and defendant had entered into an oral agreement providing for an annual salary of $30,000 for plaintiff, and in addition; a commission of 20% on legal work performed by plaintiff on behalf of defendant's clients, and 30% on work performed for his own clients; (2) that during their association, the defendant paid all office expenses after the plaintiff moved into his existing law office in Stamford in 1985, including rent and secretary, and he withheld income taxes and social security from salary and commissions paid plaintiff; (3) that defendant did not hold plaintiff out as a partner either on his letterhead or business card, and that plaintiff was listed as an associate of defendant, rather than partner, in Martindale-Hubbell lawyers' listings; (4) that plaintiff was not given the authority to adjust bills for legal services rendered to defendant's clients; (5) that billings for legal services rendered to or on behalf of Munson were processed through defendant's regular billing procedures; (5) that Munson offered to settle all his outstanding bills with defendant for approximately $13,000, but that defendant, believing he was owed approximately $50,000 by Munson, rejected this tender and this account is still outstanding; (6) that plaintiff had neglected to keep accurate time records relating to legal services he performed on Munson matters; and (7) that plaintiff left defendant's employment on June 13, 1988. CT Page 5692
Based on these findings of fact, the attorney trial referee concluded that: (1) plaintiff was an employee of defendant rather than his partner or some kind of independent contractor; (2) plaintiff was not only owed commissions of $8,349.77 for legal fees received by defendant prior to the time plaintiff left his employ, but was also entitled to commissions of $7,756.72 for fees received by defendant after June 13, 1988, when plaintiff terminated his relationship with defendant, both sums to include interest at the statutory rate; (3) plaintiff was not entitled to double damages for failure to pay wages pursuant to General Statutes § 31-72, because defendant had some plausible arguments to the effect that plaintiff was not his employee, and also because defendant had not acted in bad faith, arbitrarily or unreasonably in asserting that plaintiff was only entitled to share in legal fees received by defendant before plaintiff left his employ; (4) defendant had the right to pursue Munson for legal fees allegedly owed him, and that plaintiff had waived his right to collect any percentage of these fees, if and when collected; and (5) defendant had not proved his counterclaim that plaintiff made false representations or breached any fiduciary duty owed defendant.
Although the plaintiff subsequently filed exceptions dated January 31, 1994 to the referee's report, Practice Book § 439, he did not first file a motion to correct the report. Practice Book § 439 provides that exceptions will not be considered unless "its subject matter has been submitted . . . in a motion to correct . . ." It therefore follows that the factual findings by the referee must stand uncorrected as to the plaintiff, and the trial court's task is "limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions." Ruhl v. Fairfield, 5 Conn. App. 104,106, 496 A.2d 994 (1985). Failure of the plaintiff to file a motion to correct constitutes a waiver of any "right to attack the subordinate factual findings contained in the report."Bernard v. Gershman, 18 Conn. App. 652, 655, 559 A.2d 1171
(1989).
The defendant, pursuant to Practice Book § 438, did move to correct the report, claiming that: (1) the parties had not reached an agreement with respect to plaintiff's right to recover commissions on fees received by defendant after plaintiff terminated their relationship on June 13, 1988; (2) the plaintiff was a partner rather than an employee of defendant, and therefore CT Page 5693 commissions paid to him did not represent wages pursuant to General Statutes § 31-71a(3); (3) if plaintiff was not defendant's partner, he was at a minimum an independent contractor, and therefore not entitled to money received by defendant after he ceased working with defendant; and (4) plaintiff's failure to keep accurate records of his time charges caused monetary damages to defendant.
The referee declined to make any substantive changes to his report in response to the defendant's motion to correct. The defendant then filed exceptions to the referee's report pursuant to Practice Book § 439, including the required transcript. The exceptions repeat the substance of the motion to correct and again contend that the referee's report should be amended to indicate: (1) that the plaintiff was not his employee, but rather they were either partners, or plaintiff was an independent contractor; (2) that plaintiff is not entitled to a percentage of legal fees received by defendant after plaintiff terminated their relationship in June of 1988; and (3) that plaintiff breached the fiduciary duties he owed defendant by failing to keep proper records and billings for work performed and that defendant lost money as a result.
Regarding the scope of this court's authority in reviewing an attorney trial referee's recommendations as to the facts of a given case, it is very clear that such review is limited. The Connecticut Supreme Court has stated that: (1) the trial court may not "retry the case"; (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book § 439, "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear"; and (3) a trial court may not engage in "fact-finding contrary to the report of the referee." Dills v. Enfield, 210 Conn. 705, 714, 557 A.2d 517
(1989). This court's role is to determine whether the conclusions of fact and law by the referee "are legally and logically correct and whether they find support in the facts found by the referee." Bernard v. Gershman, supra, 656; Practice Book § 440. This procedure is similar to that employed by an appellate court in reviewing a decision of the trial court. The Appellate Court has noted that: "[o]n appeal, our review is limited to a determination of whether the trier's findings are clearly erroneous . . . . This involves a two part function: where the legal conclusions of the court are challenged, we must CT Page 5694 determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous . . . ." (Internal quotation marks and citations omitted.) Fortier v. Newington Group, Inc.,30 Conn. App. 505, 509, 620 A.2d 1321 (1993).
Therefore, the first issue in analyzing the exceptions filed by defendant is whether the referee's factual findings that the plaintiff was an employee and not a partner of defendant, or an independent contractor, are supported by the record. A review of the transcript indicates, among other things, that the plaintiff was hired as a salaried employee, and that his work was under the general supervision and control of defendant, particularly when he began his association with the defendant.[1]
There was testimony in the record to the contrary by Mr. Davis. in which he characterized his relationship with plaintiff in different terms, although he did state: "[w]ith regard to my clients, I wanted to see [the plaintiff's legal work], especially when he first came, before it went out." The testimony regarding the plaintiff's status differed, but, the Appellate Court recently stated: "[a]lthough much of the trial testimony was disputed, the credibility of witnesses, the findings of facts and the drawing of inferences are all within the province of the trier of fact . . . . It is futile to assign error involving the weight of testimony or the credibility of witnesses . . . . This court can neither retry the facts in order to make our own findings nor pass on the credibility of witnesses . . . but can only review such findings to determine whether they could legally, logically and reasonably be found thereby establishing that the trial court could reasonably conclude as it did." (internal quotation marks and citations omitted.) Citytrust v.Page, 28 Conn. App. 907, 908, 610 A.2d 197 (1992). In reviewing defendant's motion to correct and the exceptions filed by both parties, one senses that they are attempting to substitute their own versions of the facts for those found by the referee, a practice which was discountenanced in Argentis v. Gould, 23 Conn. App. 9,19, 579 A.2d 1078 (1990).
The next issue is whether the referee's conclusions follow logically and legally from his factual findings. The conclusion CT Page 5695 that plaintiff was an employee was based, among other things, on the factual findings that: (1) there was no indication on the firm's letterhead or business cards that plaintiff was other than an employee; (2) defendant paid all office expenses, and plaintiff joined the defendant's established law firm; (3) defendant withheld income taxes and social security from plaintiff's compensation; (4) plaintiff was not authorized to sign checks on behalf of the defendant's law firm, and the firm had only one checking account; and (5) the referee noted that the definition of "wages" includes commissions. General Statutes § 31-71a(3). The conclusion that plaintiff was an employee follows logically and legally from the above recited factual findings.
Both the plaintiff and the defendant filed objections to the acceptance of the report pursuant to Practice Book § 440. The objections filed by plaintiff contend that once the referee found that he was an employee and was owed wages, he was then entitled to double wages under General Statutes § 31-72. "[w]hen any employer fails to pay an employee wages . . . such employee . . . may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court . . . ." General Statutes § 31-72. The referee determined, however, that the defendant did not act in bad faith or unreasonably in not paying plaintiff the wages that were owed him because he had some plausible and defensible reasons for contending that plaintiff was not his employee. The double wage provision of General Statutes §31-72 is not automatically available to an employee who is owed back wages. Sansone v. Clifford, 219 Conn. 217, 219,592 A.2d 931 (1991). "[I]n an action for wages brought pursuant to General Statutes § 31-72, awards for double damages and attorney's fees are inappropriate in the absence of the trial court's finding of bad faith, arbitrariness or unreasonableness." (Internal quotation marks and citations omitted). Id. Plaintiff also objects to the referee's recommendation that he not share in any fees received by defendant from the Munson account, but the referee's finding that plaintiff had waived [the right to do so must stand unchallenged in the absence of a motion to correct. Practice Book § 439.
Defendant objects to the referee's conclusion that the plaintiff was his employee and hence entitled to receive a percentage share of legal fees received by the defendant's law firm even after Plaintiff terminated their relationship for CT Page 5696 services rendered by plaintiff prior thereto. The distinction between an employee and an independent contractor is discussed inLatimer v. Administrator, 216 Conn. 237, 579 A.2d 497 (1990), in the context of unemployment compensation. In that case, the Supreme Court discussed the so-called ABC test which holds that an independent contractor is: (1) one who is free of control and direction from another person; (2) one who performs services outside the usual course of the business of the alleged employer or performs such services outside of that person's place of business; and (3) one who is customarily engaged in the same kind of business as that involved in the service performed. Id., 247. The attorney trial referee found as a fact that plaintiff's legal services were under the "control and direction" of defendant and hence that he was not an independent contractor. "The determination of the status of an individual as an independent contractor or employee is often difficult . . . and, in the absence of controlling considerations, is a question of fact." Id., 249.
A partnership is defined in the Uniform Partnership Act as an association of two or more persons "to carry on as co-owners a business for profit." General Statutes § 34-44 (1). Furthermore, a partner is co-owner of specific partnership property and has an equal right with the other partners to possess such property, and when he ceases to be associated with the partnership, it is deemed dissolved. General Statutes §§ 34-63 (1)(2)(a); 34-67. The attorney trial referee did not characterize the relationship between plaintiff and defendant as manifesting any of these attributes. The defendant also objects to the referee's recommendation that he not recover on his counterclaim against the plaintiff alleging breach of contract, false representations and violation of fiduciary duties. The referee did find some deficiencies in plaintiff's record keeping but not sufficient to warrant the payment of damages, and as to the Munson account, of course, the referee recommended that defendant keep any fee he ultimately recovers from this client.
Based on the standard of review in Dills v. Enfield, supra, I could neither find nor determine that the attorney trial referee's conclusion with respect to the amount owed plaintiff was unwarranted, illegal or illogical. To the contrary, in the words of Practice Book § 440, his recommendations were "properly reached on the basis of the subordinate facts found." The referee was obliged to ascertain the intent of the parties and "what the parties intended to include in their [agreement] is CT Page 5697 a question of fact." Four D's, Inc. v. Mattera, 25 Conn. App. 308,312, 594 A.2d 484 (1991). "Absent clear error, [the court] will not disturb the trier's factual findings." Id., 314. It is axiomatic that "[i]n a contract action, findings of fact should be overturned only when they are clearly erroneous." WilcoxTrucking, Inc. v. Mansour Builders, Inc., 20 Conn. App. 420, 425,567 A.2d 1250 (1990).
Thus, no material error in the referee's report has been found, or any other sufficient reason why it is unacceptable; see Practice Book § 443. Therefore, judgment is entered in accordance with the report of the attorney trial referee in favor of the plaintiff to recover from the defendant the principal sum of $16,106.49. As to $8,349.77 of this sum, interest at the legal rate of 10% per year from June 13, 1988. to the date of this judgment should be added. Interest for this period totals $4,932.87. As to the balance of $7,756.72, the plaintiff is entitled to interest at the same rate from the date he started this action, December 14, 1989, to the date of judgment, which totals $3,415.79.
Thus, judgment enters in favor of the plaintiff to recover from the defendant the total sum of $24,455.15. Also, judgment enters in favor of the plaintiff with respect to defendant's counterclaim.
Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 10 day of May, 1994.
William B. Lewis, Judge