[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves the rendering of graphic design services and whether the two individual defendants, Burt Fischler and Susan Warren, are personally liable to the plaintiff, Tom Fowler, Inc. The plaintiff claims that it provided such services to Fischler and Warren as individuals d/b/a Marketing-on-Trend, and not to a corporation and/or a limited liability corporation as claimed by the individual defendants.
The plaintiff filed an amended complaint dated July 19, 1996, which contained eight counts directed against the two individual defendants, Fischler and Warren, d/b/a Marketing-on-Trend, and also against Marketing-on-Trend, Inc., and Event Marketing Group, LLC. The plaintiff alleges in the first count of its complaint that between January and June, 1995, it furnished graphics and designs to Fischler at his request in the approximate amount of $56,000, that it had been paid about $27,000, and that a balance remained in the approximate amount of $29,000. In the second count, the plaintiff repeats the same allegations as to Susan Warren, also alleged to be doing business as Marketing-on-Trend. In the third and fourth counts, the plaintiff alleges that Fischler and Warren, respectively, violated General Statutes § 35-1 by failing to file a certificate of doing business under a trade name, which also constituted a violation of General Statutes § 42-110b, the Connecticut Unfair Trade Practices CT Page 10164 Act (CUTPA). In the fifth and sixth counts, the plaintiff realleges that Fischler and Warren, respectively, violated CUTPA. In the seventh count, the plaintiff alleges that it rendered its services to the defendant Marketing-on-Trend, Inc., a Delaware corporation. In the eight count of the complaint, the plaintiff contends that this foreign corporation violated General Statutes § 33-412 (c) by failing to obtain a certificate of authority to transact business in this state. In the ninth count, the plaintiff alleges that it provided such services to defendant, Event Marketing Group, LLC. The plaintiff seeks monetary and punitive damages pursuant to CUTPA.
The defendants, in their answer, deny the material allegations of the complaint, except that they assert that Marketing-on-Trade, Inc. and/or Event Marketing Group, LLC, did make certain payments to the plaintiff. Fischler and Warren, hereinafter referred to as the defendants because the corporate defendant and the limited liability corporation did not file appearances and hence were defaulted, also filed five special defenses. The first of such defenses alleges that the plaintiff had waived any claim against the individual defendants because it contracted with and accepted payments from the corporate defendants. In their second special defense, the defendants allege that the plaintiff is equitably estopped from asserting any claim against them. The third special defense contends that the Statute of Frauds bars any claim by the plaintiff. The defendants claim in their fourth special defense that the plaintiff has been paid for the goods and services it furnished. In the fifth special defense, the defendants complain that the goods and services rendered by the plaintiff were unworkmanlike and untimely.
The case was referred to Attorney Sydney C. Kweskin, an attorney trial referee, in accordance with General Statutes §52-434 (a) and Practice Book § 428 et seq. The referee conducted a two-day trial, and thereafter submitted a report finding the following facts: (1) the plaintiff received and accepted three corporate checks in the total amount of $27,943 in the first part of 1995; (2) at a January, 1995 meeting, Fischler instructed the plaintiff to send all future invoices to Marketing-on-Trend, and no longer to the corporation, Marketing-on-Trend, Inc.; (3) after the January, 1995 meeting, the individual defendants conducted business under the name of Marketing-on-Trend; (4) at the end of each month commencing January, 1995, the plaintiff sent invoices to the individual CT Page 10165 defendants and did not refer to the corporations; (5) the work performed by the plaintiff was accepted by and satisfactory to the defendants; and (6) the defendants never filed a certificate of doing business under a fictitious or assumed trade name.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the defendants had transacted business under the assumed name of Marketing-on-Trend, and had violated General Statutes § 35-1, which provides that no one may transact business in this state under an assumed name without filing a certificate with the town clerk stating the name under which such business is to be conducted; (2) the individual defendants were liable to the plaintiff in the amount of $27,943, without interest or costs since the defendants did not act unfairly or in a deceptive manner; (3) the defendants had failed to prove their special defense that the goods and services furnished by the plaintiff were unworkmanlike or untimely; and (4) the corporate defendant was liable to the plaintiff in the amount of $1,180 for work billed to the corporation before the plaintiff was instructed to invoice Marketing-on-Trend, and not the corporation.
Pursuant to Practice Book § 438, the defendants moved to correct the referee's report. The defendants sought the addition of findings that (1) the plaintiff dealt with Fischler and Warren not as individuals but only as agents or representatives for Marketing-on-Trend, Inc. and/or Event Marketing Group, LLC; and (2) there was no contract between the plaintiff and defendants Fischler and Warren as individuals and no agreement that the individual defendants would be personally liable to the plaintiffs. The defendants' motion to correct also requested a deletion of the finding of the referee that the witness for the plaintiff, Elizabeth Ball, the vice president of the plaintiff corporation, was a credible witness but that Fischler was not.
In response to the motion to correct filed by the defendants, the attorney trial referee declined to add or delete anything of substance from his report and reiterated his recommendation to the court that judgment enter against the individual defendants.[1]
The defendants thereafter filed exceptions to the referee's report pursuant to Practice Book § 439, and they also filed the required transcript of the evidence that was introduced at the trial before the attorney trial referee. The exceptions CT Page 10166 repeat the essence of the claims contained in the defendants' motion to correct.
The defendants also filed objections to the acceptance of the referee's report, pursuant to Practice Book § 440 ("A party may file objections to the acceptance of a report on the ground that conclusions of fact stated in it were not properly reached on the basis of the subordinate facts found, or that the committee erred in rulings on evidence or other rulings or that there are other reasons why the report should not be accepted"). The objections to the report reiterate the defendants' claims that: (1) they are not personally liable to the plaintiff because they were conducting business with the plaintiff only in their capacity as representatives or agents of the corporate defendants; (2) there was no contract between the plaintiff and the individual defendants; (3) Marketing-on-Trend, Inc. never conducted business in any capacity other than as a corporation and hence was not required to comply with General Statutes §35-1; (4) Fischler and Warren did not guarantee personal payment of the contract between the plaintiff and the corporation, Marketing-on-Trend, Inc., which guarantee would require a writing in conformance with the statute of frauds, General Statutes §52-550 (a); and (5) the acceptance of corporate checks constituted a waiver/estoppel as to the plaintiff's claims against the individual defendants.
Regarding this court's scope of review of an attorney trial referee's report regarding the facts of a given case, the Supreme Court reiterated in Elgar v. Elgar, 238 Conn. 839, 679 A.2d 937
(1996), that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) Id., 848-49. CT Page 10167
According to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence." Id. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id.
As to the first task, a review of the transcript indicates that the referee's findings of fact have support in the record.[2] Moreover, in their motion to correct, the defendants concede that after the January 27, 1995 meeting, the plaintiff began sending invoices to the defendants as Marketing-on-Trend, and not to the corporation, Marketing-on-Trend, Inc. It is evident from his report that the referee relied on this fact as well as the change in the plaintiff's invoice or billing procedure after the January, 1995, meeting to reach his conclusion about individual liability. The exceptions filed in this case by the defendants relate essentially to the recommendation of the referee that the plaintiff recover damages from the individual defendants who were conducting business under an assumed or trade name. The defendants contend that the referee's determination in this respect should be disregarded, but that would require the court to reexamine the credibility of the defendants and the other witnesses, and to substitute the defendants' version of the facts for those found by the referee, which is not permitted.
In addition to insuring that the factual findings are supported by the evidence introduced at trial, the court in reviewing an attorney trial referee's report must also determine whether "the conclusions reached were in accordance with the applicable law." Thermoglaze, Inc. v. Morningside Gardens, Inc.,23 Conn. App. 741, 746, 583 A.2d 1331, cert. denied,217 Conn. 811, 587 A.2d 153 (1991); see also Bernard v. Gershmann,18 Conn. App. 652, 656, 559 A.2d 829 (1989).
The objections to the referee's report filed by the defendants also appear to seek an overturning of the referee's factual findings, but it is axiomatic that "Section 440 . . . cannot be used to attack findings of fact." Iroquois GasTransmission System v. Mileski, 43 Conn. App. 47, 51,682 A.2d 140 (1996). Moreover, the finding by the referee that after the January 27, 1995 meeting, the parties intended that the plaintiff would be doing business with the individual defendants, not with the corporation, is quintessentially a factual finding concerning CT Page 10168 the intent of the parties in formulating an agreement. As stated in Foley v. Huntington Company, 42 Conn. App. 712, 730-31,682 A.2d 1026 (1996), "[t]he construction of a contract is usually a question of fact because the interpretation of its language is a search for the intent of the parties, making contractual intent a classic question of fact. A conclusion as to the intent of the parties must stand unless it is one that a trier could not reasonably reach." (Citation omitted.)
"Where the fact finder's conclusions as to intent are based on such factors as the credibility of witnesses and the testimony of live witnesses as to the meaning of a contract or as to the circumstances surrounding the execution of a contract, a question of fact as to intent of the parties exists." Griffin v. Planning Zoning Commission, 30 Conn. App. 643, 650, 621 A.2d 1359
(1993). "The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence."Fortier v. Newington Group, Inc., 30 Conn. App. 505, 509,620 A.2d 1321 (1993). "What the parties intended to include in their [agreement] is a question of fact." Four D's, Inc. v. Mattera,25 Conn. App. 308, 312, 594 A.2d 484 (1991).
"To give meaning to contracts, courts interpret the intent of the parties by construing the whole contract and all relevant provisions together. . . . In construing contract terms, the court seeks to effectuate the intent of the parties . . . . To ascertain the parties' intent, the courts consider . . . the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish . . . . The intent of the parties is normally a question of fact for the trier . . . which we will not disturb unless it is clearly erroneous." (Citations omitted; internal quotation marks omitted.) Colby v. Burnham, 31 Conn. App. 707,714, 627 A.2d 457 (1993).
Based on the above cited cases, it would not be proper for the court in this breach of contract case to reject the referee's conclusion that the defendants are individually liable because such conclusion is legally, and logically consistent with the facts found by the referee. Romano v. Derby, 42 Conn. App. 624,628, 681 A.2d 387 (1996). Thus, no material error in the referee's report had been found, nor is there any other sufficient reason for rendering the report unacceptable. Practice Book § 443. Hence, judgment is entered in favor of the plaintiff against the individual defendants, Fischler and Warren, CT Page 10169 in the amount of $27,943.54, without prejudgment interest or costs.[3]
So Ordered.
Dated at Stamford, Connecticut, this 13th day of October, 1997.
William B. Lewis, Judge