[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S OBJECTION TO ACCEPTANCE OF FINDING OF FACTS (# 115) AND DEFENDANTS' MOTION FOR AWARD OF ATTORNEY'S FEES (#117) 
This memorandum of decision addresses the plaintiff's Objection to Acceptance of Findings of Fact, dated April 20, 2000 (# 115), which raises jurisdictional issues, and the defendants' corollary Motion for Award of Attorney's Fees, dated June 14, 2000 (# 117), claiming fees incurred in opposing the jurisdictional questions. For the reasons stated below, the court finds the jurisdictional and factual claims in favor of the defendants, but finds the issues relating to attorney's fees in favor of the plaintiff
This matter arises from claims brought by the plaintiff Commissioner of Labor (Labor Commissioner) on behalf of one Dale Ruth. Ruth, who had been employed by the defendant Freedom Choice Mortgage, LLC (Freedom Choice), asserted that she was owed commissions in connection with certain mortgage loans she had originated prior to the termination of her work for the defendants. Therefore, the Labor Commissioner sought double damages together with attorneys, costs and interest. Amended Complaint, Count One.[1]
On September 16, 1999, the caseflow coordinator of the Hartford Superior Court issued a notice indicating that this matter had "been scheduled for trial before a factfinder," and that trial would commence at 2:00 pm on January 24, 2000. (Exhibit 1, 8/22/00.) The notice advised the parties to present any continuance requests "in advance in writing," thus implicitly inviting the submission of any objections to the assignment. (Id.) Thereafter, the trial of the issues was heard before the designated fact-finder on January 24, 2000, and at continued sessions on February 7 and March 6 of 2000. The fact-finder's report (report), including both findings and a memorandum of opinion, was filed with the court on April 7, 2000 (# 113). The report acknowledged that at the time of trial, the plaintiff had expressed "`reservations' about the jurisdiction of the fact-finder." The report includes findings of fact CT Page 613 based upon the evidence, a recommendation that judgment be entered for the defendants on all counts, and expressed the fact-finder's opinions on issues raised by the plaintiff, including jurisdiction over the subject matter of the hearing. (Id.) Following the submission of the report, the plaintiff submitted the Objection to Acceptance of the Finding of Facts (# 115), raising both factual and legal concerns with the fact-finder's report.
In addition to oral argument, this court has been provided with thorough and detailed memoranda from both the plaintiff and defendants, establishing the legal and factual arguments on which each relies, including specific supplementary briefs and materials addressing to the issue of attorney's fees. At the agreement of the parties, the court has been provided with the voluminous transcripts from the proceedings before the fact-finder.
 I JURISDICTION OF THE FACT-FINDER
In support of his objection, the plaintiff first claims that the fact-finder improperly heard the case and inappropriately made findings where he had no jurisdiction. The plaintiff rests his argument "on the grounds that any findings of fact in this case would be inextricably intertwined with a question of law which was not within the province of the fact-finder to make." Through ¶ 1 of their Response to Plaintiff's Objection to Acceptance of Findings of Fact, dated May 2, 2000 (# 116), the defendants contend that the fact-finder had jurisdiction over the matter, and that the plaintiff's failure to file a formal objection to the assignment of the matter to a fact-finder constituted an effective waiver of any jurisdictional defect that might exist. The court finds these issues in favor of the defendants.
 A 
The court has first considered the claims that the fact-finder lacked subject matter jurisdiction to hear the matter at issue because the plaintiff's claims did not rest upon the construction of a contract. Because of this circumstance, the plaintiff submits, the case should not have been heard pursuant to General Statutes § 52-549n,[2] which limits fact-finders to hear only "contract actions," although the matter may have been appropriate for hearing before an attorney trial referee pursuant to General Statutes § 52-434(a)(4).[3] Upon consideration of the plain language of the applicable statutes, the court finds that it was proper to have referred this matter either to an attorney fact-finder or attorney trial referee[4] because the requirements of both § CT Page 61452-549n and § 52-434(a)(4), respectively, were satisfied in this case.
Our legislature has established two referral programs, involving fact-finders and state referees, for the use in resolution of certain matters that need not be heard by judges of the Superior Court. Pursuant to General Statutes 52-549n, fact-finders are limited to hearing contract actions which are "based upon an express or implied promise to pay a definite sum" and in which only money damages "less than fifty thousand dollars" are claimed. See also Practice Book § 23-53[5] Pursuant to General Statutes § 52-434(a)(4), the Chief Justice may appoint a state referee to hear a matter and report the facts. Because attorney referees lack power to render a judgment, "an attorney referee is simply a fact-finder. . . ." Seal Audio, Inc. v. Bozak, Inc., 199 Conn. 496,502, 507 A.2d 415 (1986); see also Four D.'s Inc. v. Mattera,25 Conn. App. 308, 312-313, 594 A.2d 484 (1991). Further, attorney trial referees "share the same function of factfinders whose determination of the facts is reviewable in accordance with well established procedures prior to the rendition of judgment by the court." (Internal quotation marks omitted.) Rostenberg-Doern Co. v. Weiner, 17 Conn. App. 294, 299,552 A.2d 827 (1989) (holding that a contract action could have been referred to either an attorney referee or a fact-finder). Our Appellate Court has noted that referees and fact-finders thus "function in similar fashion on parallel tracks, [although] the factfinders are limited in their reach to contract actions under [$50,000], while attorney statetrial referees reach the entire spectrum of nonjury cases. . . .[Nevertheless], the statutory limits placed upon a factfinder'sauthority to hear a case do not similarly restrict the jurisdictionalauthority of an attorney state trial referee." (Emphasis added.) E.I.Constructors, Inc. v. Scinto, 12 Conn. App. 348, 353, 530 A.2d 1081
(1987).
Applying this analysis to the present case, it is clear that our appellate level courts would support the assignment of the matter for hearing before either a fact-finder, as was elected by the caseflow coordinator, or by an attorney trial referee. The factual basis for the plaintiff's claims, as set forth through the original and amended complaint, alleged that on February 6, 1996, the plaintiff's relatrix Ruth had signed a commissioned loan representative agreement, or contract, with the defendant Freedom Choice. Upon the defendants' alleged breach of that contractual agreement, the Labor Commissioner acted pursuant to his authority under General Statutes § 31-72,[6] and brought an action on Ruth's behalf against the defendant to recover contractual compensation by way of commissions, as well as costs and other relief. Because Ruth signed a contract and because the plaintiff brought an action for less than fifty thousand dollars, the finder of CT Page 615 fact could hear the case pursuant to either General Statutes § 52-549n
or by operation of the overlapping provisions of § 52-434(a)(4).E.I. Constructors, Inc. v. Scinto, supra, 12 Conn. App. 353. See also SealAudio, Inc. v. Bozak, Inc., supra, 199 Conn. 502; Rostenberg-Doern Co.v. Weiner, supra, 17 Conn. App. 299. Accordingly the Labor Commissioner cannot prevail on this issue.
 B 
The court has next considered the plaintiff's implicit claim that because the complaint does not present a formal action upon a contract, it could not properly be referred to a fact-finder, and that any findings of fact resulting from such a reference are invalid or ineffective as a matter of law. The court finds that such a constrained application of the provisions of General Statutes § 52-549n or § 52-434(a)(4) would frustrate the legislature's clear plan to allow parallel operation of state referees and fact-finders where contract matters involve controversies of less than $50,000, as does the case at bar. E.I.Constructors, Inc. v. Scinto, supra, 12 Conn. App. 353. Accordingly, the court finds this issue, as well, in favor of the defendants.
It has been held that "[t]he phrase `any contract action' in §52-549n does not require that every claim in a case be a purely contractual action. . . ." before it is assigned for hearing before a fact-finder. Beizer v. Goepfert, 28 Conn. App. 693, 697-98, 613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992). In general, "the purpose of the contract duty is to secure the receipt of the thing bargained for. . . ." (Citation omitted.) Id., 700. The operative provisions of § 52-549n are thus: 1) that the relief claimed is limited to money damages, and 2) that less than $50,000 in monetary damages being sought. "Section 52-549n allows any contract action to be referred to a factfinder if only money damages are claimed and if the amount in controversy does not exceed [$50,000]." (Internal quotation marks omitted.) Id., 698. Factors that may assist the court in determining whether claims involved in a case are contractual in nature, in the context of § 52-549n, include "[t]he source or origin of the duty alleged to have been violated; the nature of the grievance; the character of the remedy such facts indicate; [and] the type of damages sought." (Internal quotation marks omitted.) Id., 700. Insofar as public policy issues are concerned, our Appellate Court has acknowledged that General Statutes 52-549n "was adopted to [reduce] the backlog of cases with which the judiciary is plagued. . . .This does not lend itself to a narrow construction of the phrase `any contract action.' The legislature intended to free the judiciary from the factfinding tasks in simpler, nonjury cases involving [$50,000] or less. This indicates that thelegislature preferred to include rather than to exclude cases." (Citation CT Page 616 omitted; emphasis added.) Id., 698-99.
In applying these principles to the present matter, it is significant to observe that a clerical endeavor such as "the coding of an action does not determine the basis of the claim for the purposes of § 52-549n."Beizer v. Goepfert, supra, 28 Conn. App. 701. Here, although the lawsuit was coded as a statutory cause of action pursuant to § 31-72, the basis of the claim, for purposes of effectuating § 52-549n, is clearly contractual in nature.
Notwithstanding the Labor Commissioner's statutory authorization to pursue this matter, the plaintiff's fundamental allegations are directly derived from Ruth's claim that the defendants owed her a duty, and that they violated that duty. See Beizer v. Goepfort, supra, 28 Conn. App. 700. The monetary compensation ostensibly due to Ruth was based upon a written commissioned agreement, or contract, that she is alleged to have signed in the course of her work with Freedom Choice. Absent the existence of this contract, there would be no basis for the Labor Commissioner's lawsuit against Freedom Choice, despite the existence of § 31-72. Accordingly, as the litigation is fundamentally based upon the provisions of the contact between Ruth and the defendants, the fact-finder has the jurisdiction to hear this matter pursuant to an appropriate application of § 52-549n.
 II CHALLENGE TO THE SUFFICIENCY OF THE FACTUAL FINDINGS
In further support of his objection to the findings of fact in this matters, the plaintiff argues that the fact-finder's conclusions were contrary to the evidence, inconsistent, and otherwise invalid. He also objects to the acceptance of the report for the additional reason that it contains unnecessary and unwarranted comments upon the propriety of the provisions contained in Ruth's contract with First Choice, specifically providing for reduced commissions on loans not closed prior to her termination from employment. The defendants claim that the evidence presented at trial abundantly supported the conclusions of the fact-finder, and also argue that his comments upon the legal worth of the contract's provisions do not vitiate the effect of his factfinding. The court finds this issue in favor of the defendants.
Generally, "[i]t is the trial court's function "to review the findings of the factfinder initially to determine whether those findings were properly reached on the basis of subordinate facts found." Shaw v. L.A.Socci, Inc., 24 Conn. App. 223, 229, 587 A.2d 429 (1991). "In a contract action, findings of fact should be overturned only when they are clearly
CT Page 617 erroneous." (Emphasis added.) Wilcox Trucking, Inc. v. Mansour Builders,Inc., 20 Conn. App. 420, 425, 567 A.2d 1250 (1989). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Beizer v. Goepfert, supra, 28 Conn. App. 704. A fact-finder's recommendation should be accepted when "there is nothing that is unreasonable, illogical or clearly erroneous in the findings of the factfinder and the reasonable inferences that may be drawn therefrom." Id.
The plaintiff in this matter bears the burden of proving "that the factual findings were clearly erroneous." Beizer v. Goepfert, supra,28 Conn. App. 704. In addition, when legal conclusions are challenged, the court must "determine whether they are legally and logically correct and whether they find support in the facts found. . . ." Bernard v.Gershman, 18 Conn. App. 652, 656, 559 A.2d 1171 (1989). It is "axiomatic that the trier of fact may draw reasonable and logical inferences from the facts proven." (Citation omitted; internal quotation marks omitted.)Tianti v. William Raveis Real Estate, Inc., 231 Conn. 690, 700-01,651 A.2d 1286 (1995). However, where the fact-finder goes "beyond the bare statutory requirement of reporting the facts found by including his opinion upon the legal issues involved in the case [would] not transform his role into a judicial one." Seal Audio, Inc. v. Bozak, Inc., supra,199 Conn. 510. The views of the fact-finder "upon the law carry no more force than those of the parties in their arguments at the hearing before the court that is to enter judgment." Id. Furthermore, the legal opinions of a fact-finder, "like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment." Id.
The courts task in reviewing a fact-finder's report is to examine "the record to determine whether the findings of fact . . . were supported by the evidence. . . ." Shaw v. L.A. Socci, supra, 24 Conn. App. 229-30. In doing do, the court should bear in mind that the finder of fact "is in a better position to determine the credibility of witnesses and the weight to be accorded their testimony. . . .[Nevertheless, t]he trial court isnot bound by the uncontradicted testimony of any witness." (Citations omitted; emphasis added.) Beizer v. Goepfert, supra, 28 Conn. App. 706.
In addressing the issues related to the validity of the fact-finder's factual report, the court has had the opportunity to review the transcript of the hearings in their entirety. Having done so, the court concludes that the fact-finder's report should be accepted in this matter, because the conclusions are supported by the evidence presented at the hearing. See Shaw v. L.A. Socci, supra, 24 Conn. App. 229-30. CT Page 618 Furthermore, notwithstanding the protests of the plaintiff, close scrutiny of the record in this case reveals that there is nothing unreasonable, illogical or clearly erroneous, or mistaken about the recorded findings and their relation to the facts established by the evidence concerning the nature of the agreement between Ruth and the defendants, or the circumstances under which this contract was agreed to.[7] Wilcox Trucking, Inc. v. Mansour Builders, Inc., supra,20 Conn. App. 425; Beizer v. Goepfert, supra, 28 Conn. App. 704. In drawing inferences from the evidence proved at trial, "finders of fact are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Citation omitted; internal quotation marks omitted.)" Tianti v. William RaveisReal Estate, Inc., supra, 231 Conn. 700-01. Based on common knowledge, the fact-finder in this matter could reasonably find that the plaintiff failed to provide requisite evidence of unfairness or of unconscionability that in any way could have affected Ruth's voluntary agreement upon the provisions for the reduced commissions she would receive for her work with Freedom Choice. Accordingly, the plaintiff cannot prevail on his claims that the evidence was insufficient to support the fact-finder's report in this regard.
As to the issue of the fact-finder's comments upon the lack of unconscionability in the provisions of the loan representation agreement between Ruth and the defendants, the court finds that the plaintiff's arguments on this ground are unavailing, as well. Although pressing the court to adopt his position on this issue, the plaintiff has cited no Connecticut authority to support the proposition that such a forfeiture clause in a loan or sales representation agreement is against public policy as a matter of law.[8] The trial transcript lacks any reference to an application of Connecticut case law establishing that the contract provisions were against public policy, and the record thus contains an insufficient factual basis from which such a conclusion could properly be drawn. The court recognizes that "there may be situations where the facts found are so egregious as to require a conclusion, as a matter of law, that there has been a violation of a public policy. . . .Such circumstances may encompass acts that violate a criminal statute, or . . . [that are] a flagrant abuse . . ." of the policies in question.Francoline v. Klatt, 26 Conn. App. 203, 211, 600 A.2d 8 (1991). Those facts do not, however, occur in the present matter, where Ruth knowingly and intelligently entered into a voluntary contract with Freedom Choice, having made her free choice to do so.
Thus, under the circumstances of this case, the fact-finder could reasonably, logically and correctly find that, because the plaintiff CT Page 619 failed to evince a statute or other rule of law prohibiting the provisions of the loan representation agreement, the facts pertaining to the contract clause in this case do not amount to a public policy violation. The fact-finder's comments upon the lawfulness of the contract at issue do not, in any way, tarnish its legal adequacy: the comments were, at worst, extraneous, even if correct.
Here, the court has not been persuaded, nor even tempted, to substitute its factual findings for those of the fact-finder, due to the existence of the commentary in the memorandum portion of the fact-finder's report. The court has, as it is required to do, determined whether the factual findings set forth in the report are supported by the evidence and whether, in light of the evidence, those factual findings are clearly erroneous. Pandolphe's Auto Parts, Inc. v. Manchester, 181 Conn. 217,221-222, 435 A.2d 24 (1980); Wilcox Trucking, Inc. v. Monsour Builders,Inc., supra, 20 Conn. App. 435.
The fact-finder in this matter could reasonably have interpreted the evidence to find that Ruth signed a loan provision for reduced commissions, which did not violate public policy and was not unconscionable, the plaintiff cannot prevail on this ground. As noted above, because evidence of a public policy violation is in fact lacking in this case; because there is nothing clearly erroneous about the fact-finder's decision; and because the fact-finder's conclusory legal comments are not binding, the court here rejects the plaintiff's objection to acceptance of the findings of fact.
 III ATTORNEY'S FEES
The defendants claim that because they have prevailed on the issues relating to jurisdiction and the factual sufficiency of the fact-finder's report, they are entitled to recover attorney's fees in this matter, based upon the operation of the contract in question. The defendant argues that it is not obligated to pay any award of attorney's due to the operation of the principle of sovereign immunity. The court finds that the contract at issue does not provide adequate grounds for the defendants' claim, and therefore this issue is found in favor of the plaintiff.
"The common law rule in Connecticut, also known as the American Rule, is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." (Internal quotation marks omitted.) Fleming v. Garnett,231 Conn. 77, 93-94, 646 A.2d 1308 (1994). As punitive damages, attorney's fees generally may not be recovered, absent the pleading and CT Page 620 proof of fraud or other basis for award of punitive damages.[9] SeeFarrell v. Farrell, 36 Conn. App. 305, 311, 650 A.2d 608 (1994); O'Learyv. Industrial Park Corp., 211 Conn. 648, 651, 560 A.2d 968 (1989).
As the basis for their claimed entitlement to attorney's fees from the plaintiff, the defendants here rely upon Clause XII of the commissioned loan agreement at issue in this case. With regard to the agreement between Ruth and Freedom Choice, it is not contested that the agreement provides that "for the enforcement of any of its terms and conditions the prevailing party shall be entitled to recover reasonable attorneys fees." However, it would be disingenuous to interpret this clause as providing the defendants with access to recovery of attorney's fees from a person who was not a party to the contract. Although she was permitted to bring such an action on her own behalf, pursuant to the application of General Statutes § 31-72, the present action was brought not by Ruth, but by the Labor Commissioner. As the neither Commissioner nor the State of Connecticut were parties to the contract at issue, the agreement's provision for attorney's fees provides no succor for the defendants in this matter.
The defendants are further excluded from access to the attorney's fees in question due to the operation of General Statutes § 31-72. This legislation is directed at curbing anti-employee actions by employers, and thus should be given a liberal construction in favor of those wage-earners whom the legislation is intended to benefit. Butler v.Hartford Technical Institute, Inc., 243 Conn. 454, 463, 704 A.2d 222
(1997). The Connecticut Supreme Court has "specifically acknowledged § 31-72 as a remedial statute for the collection of wages that provides penalties in order to deter employers from deferring wage payments once they have accrued." (Internal quotation marks omitted; emphasis added.) Id. This is because "a primary purpose [of § 31-72
is] to penalize the employers." (Internal quotation marks omitted; emphasis added.) Id.
Here, the defendants stand before the court as Ruth's employers. No reasonable interpretation or application of § 31-72 supports an award attorneys' fees to the employer when the plaintiff Commissioner fails to prevail in an action brought to recover lost wages. In addition, because § 31-72 existed when Ruth and the defendant entered into a contractual agreement, the terms of that agreement incorporated the language of that statute. Kreidler v. Bic Pen Corp., 16 Conn. App. 437,442, 547 A.2d 590 (1988) (acknowledging the presumption that parties contract in the light of existing statutes). Thus, although the parties to the contract may have agreed to the payment of attorneys' fees under certain circumstances, unless the contract disclosed a contrary intention, the contract must be read with the gloss of § 31-72, CT Page 621 limiting recovery of attorneys fees to actions between the parties. Id.
Accordingly, because the plaintiff was not a party to the contract between Ruth and the defendants, the plaintiff is not bound by its provisions relating to the payment of attorney's fees in an action such as that here presented. The defendants have no other contractual or statutory right to such an award, which is hereby precluded by the court.
 IV CONCLUSION AND ORDERS
Practice Book § 23-58(a)(1) provides that after review of the finding of facts reported by the fact-finder, if no basis is found for rejection of the report, the court may render judgment in accordance with the finding of facts. In this matter, it is appropriate that judgment enter in favor of the defendants because the fact-finder's conclusions were based on sufficient evidence and were not clearly erroneous. As discussed above, however, the defendants are not here entitled to recover attorney's fees for their participation in this action.
WHEREFORE, based upon the foregoing cases, findings, and principles of law, the plaintiff's Objection to Acceptance of Findings of Fact, dated April 20, 2000 (# 115) is hereby OVERRULED, and the court ORDERS that those findings be accepted through the report filed on April 7, 2000, and further ORDERS that judgment enter in favor of the defendants in accordance with the fact-finder's report.
AND WHEREFORE, for the foregoing reasons, the defendants' Motion for Award of Attorney's Fees, dated June 14, 2000 (# 117), is hereby DENIED.
BY THE COURT,
N. Rubinow, J.